# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JONATHAN DAVID WILKE,**
    **Plaintiff,**

    v.                                              Case No. 20-C-862

**RANDALL WILBORN,**
    **Defendant.**

## ORDER

Plaintiff Jonathan David Wilke, who is confined at the Wisconsin Secure Program Facility, filed this case under 42 U.S.C. § 1983. He alleges that the defendant, Officer Randall Wilborn, used excessive force against him during a cell extraction at the Milwaukee County Jail on February 27, 2020. The plaintiff was allowed to proceed on an excessive force claim against the defendant in his individual capacity based on allegations that the defendant continued to punch him while he was pinned to the ground. The defendant has filed a motion for summary judgment and the plaintiff has filed a motion for discovery sanctions. I address the motions herein.

## I. BACKGROUND

At all times relevant to complaint's allegations, the plaintiff was a pretrial detainee at the Milwaukee County Jail ("Jail"). Def.'s Proposed Findings of Fact ("DPFOF"), ECF No. 30, ¶ 2. The defendant is a corrections officer ("CO") at the Jail. DPFOF ¶ 4. He is also a member of the Corrections Emergency Response Team ("CERT"), which is a group of officers who are trained in deescalating and diffusing situations that may otherwise be volatile and/or pose security concerns to the Jail. DPFOF ¶¶ 4-5.

On February 26, 2020, the plaintiff was transferred to the Jail from the Wisconsin Secure Program Facility ("WSPF") for a hearing in his pending criminal matter. DPFOF ¶ 7. Because the plaintiff was held in segregation and max custody status at WSPF, he was housed in the Jail's segregation unit, Pod 4D. *Id.* The plaintiff had previously been housed in Pod 4D, and he was aware of the rules and procedures there. DPFOF ¶ 9.

On February 27, 2020, between 8:00 a.m. and 9:00 a.m., the plaintiff began to flood his cell with water from his sink, push the water under his cell door, and cover his window with his blanket. DPFOF ¶ 17. The plaintiff was upset that he was in segregation at the Jail without the accommodations he had at WSPF. DPFOF ¶ 18. The plaintiff knew that covering his cell window and flooding his cell with water were against Jail rules. DPFOF ¶ 19. An officer noticed the covered window and wet floor, and the plaintiff was unresponsive inside the cell. DPFOF ¶ 20. Correctional Lieutenant Dominique Smith ("Lt. Smith") was called to Pod 4D. *Id.* Lt. Smith arrived at about 9:00 a.m. and approached the plaintiff's door to begin dialogue attempts with him. *Id.* When the plaintiff did not remove the sheet and continued to be unresponsive, Lt. Smith warned him that CERT would be called to forcibly enter the cell. DPFOF ¶ 21. The plaintiff continued to be unresponsive and refused to engage with Lt. Smith. *Id.*

At 9:09 a.m., Lt. Smith received clearance from Captain Briggs to issue a "10-90 call." DPFOF ¶ 22. When a 10-90 is called, Master Control notifies CERT members that they are needed, relieving them of their current duties. DPFOF ¶ 23. The defendant was called away from his assignment so that he could suit up in CERT attire. DPFOF ¶ 24. Because the call was a 10-90, the CERT members needed to wear full gear, which consisted of helmets, chest and shoulder pads that blocked the officers' nametags, knee

2

guards and arm guards that went from wrists to elbows, and gas masks that only left the officers' eyes visible. DPFOF ¶ 25.

To carry out a CERT pad entry, the front officers enter the cell with pads that are approximately 2 feet by 4 feet and used as a protective barrier for both the officer and the inmate. DPFOF ¶ 31. The goal of a pad entry is to subdue and restrain the inmate with the least amount of force possible. *Id.* In the best-case scenario, the inmate would remain standing and easily restrained with no resistance. *Id.* If the inmate resists in any way and is knocked to the ground by the pads, the responsible officer generates an incident report and notifies their superior officer. *Id.*

At 9:40 a.m., CERT, consisting of the defendant, Osvaldo Perez-Gerena, and four other individuals, responded to Pod 4D. DPFOF ¶ 28. They announced their presence to the plaintiff and ordered him to remove the sheet from his window and place his hands in the food chute door to be cuffed. *Id.* The plaintiff did not comply with the orders, and he did not respond to the officers. DPFOF ¶ 29. For the safety and security of the plaintiff, a cell extraction was necessary to ensure that the fixtures inside the cell were functional and that he had not injured himself. *Id.*

The parties dispute what happened next. According to the defendant, at 9:42 a.m., the cell door was unlocked, and CERT members completed a successful pad entry into the plaintiff's cell. DPFOF ¶ 30. The plaintiff was not knocked down to the ground at any time during the cell extraction. DPFOF ¶ 35. If the plaintiff had been knocked down and forcefully restrained as described in the complaint, the responsible officer would have drafted a report. DPFOF ¶ 36. The defendant did not punch or use focus strikes on the plaintiff during the cell extraction. DPFOF ¶ 37. If the defendant had used focus strikes

3

on the plaintiff, he would have submitted a "Use of Force" documentation to his superior officers. DPFOF ¶ 38. If any incident had occurred, it would have been contemporaneously documented in Jail records. DPFOF ¶ 52. Further, pursuant to Jail practice, a report would have been generated if any force was used like the incident described by the plaintiff. *Id.*

According to the plaintiff, when his cell door was unlocked, one of the CERT members hit him with a pad, knocking him to the ground. Pl. Resp. to DPFOF ¶¶ 30, 35, 37. The other CERT members jumped on top of the plaintiff and pinned his hands and legs to the ground so that he could not move. *Id.* After that, the defendant got on top of the plaintiff and started hitting him in his legs and ribs. *Id.* Pursuant to Jail policy, if CERT members are utilized, all CERT members, including the initial officer, the field commander, the squad team leader, and the individual CERT members, must complete reports. Pl. Resp. to DPFOF ¶¶ 36, 38, 52; ECF No. 52-1 at 7.

It is undisputed that the plaintiff was restrained in the cell using handcuffs and a "Ripp-Belt." DPFOF ¶ 32. The Ripp-Belt went around the plaintiff's waist to keep his hands close to the front of his body. *Id.* He was escorted out of the cell and searched for contraband. *Id.* At 9:50 a.m., the plaintiff was placed in a restraint chair and seen by a nurse so that the restraints could be checked and the plaintiff medically cleared. DPFOF ¶ 33.

At 10:38 a.m., Lt. Smith emailed a report of the cell extraction to all lieutenants and captains at the Jail. DPFOF ¶ 34. The subject of that email and the description within indicated "NO FORCE USED." *Id.* Neither the defendant, Lt. Carroll, nor Lt. Smith recall there being any February 27, 2020 incident in which, as the plaintiff alleges, he suffered

4

an injury. DPFOF ¶ 39. According to the defendant, when CERT is mobilized, there is an officer assigned to video record the events as they occur and, if there is use of force, the recording will be saved for future viewing by superior staff. DPFOF ¶ 27. However, Jail policy provides that all CERT mobilizations are to be video recorded, saved, and maintained in the CERT Deployment Videotape Library. Pl. Resp. to DPFOF ¶ 27; ECF No. 52-1 at 7-8.

The plaintiff alleges that he had bruises from punches to his rib cage and that the associated pain lasted two to three weeks. DPFOF ¶ 40. The plaintiff did not ask officers or medical staff for medical attention, and he did not alert anyone of his alleged injuries, even when seen by medical staff immediately following the cell extraction. DPFOF ¶¶ 41-42.

The defendant was familiar with the plaintiff because the plaintiff was housed in Pod 4D, to which defendant was frequently assigned. DPFOF ¶ 49. The defendant recalls the plaintiff to be a difficult detainee. *Id.* Had the defendant been aware that the plaintiff was claiming an injury, he would have reported that injury to his superior officer and medical staff so that proper follow-up could occur. DPFOF ¶ 51.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**B.    Analysis**

The defendant contends that the plaintiff cannot establish that he was subjected to excessive force in violation of his Fourteenth Amendment rights. According to the defendant, the plaintiff cannot establish that a use of force occurred because there is no contemporaneous documentation that an incident with the plaintiff occurred as described in his amended complaint. Even if force was used, the defendant contends that the plaintiff cannot establish that defendant's use of force was excessive because the plaintiff admitted he was resisting at the time of the search, suffered *de minimis* injuries or injuries that cannot be connected to his allegations of a February 27, 2020 incident, and presented a security issue. The defendant also contends that qualified immunity protects him from liability. In response, the plaintiff contends that there are genuine issues of material fact based on the difference between his version and the defendant's version of the facts.

Because the plaintiff was a pretrial detainee at the time of the alleged events, I review his claims under the Due Process Clause of the Fourteenth Amendment. *See Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). The Due Process Clause "'protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). The court must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the

6

Case 2:20-cv-00862-LA    Filed 02/07/22    Page 6 of 10    Document 63

20/20 vision of hindsight." *Id.* Under an objective reasonableness inquiry, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). The proper application of this standard requires consideration of the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397. This list is not exhaustive but illustrates some of the "objective circumstances potentially relevant to a determination of excessive force." *Id.*

The parties dispute whether the plaintiff was knocked to the ground during the cell entry and whether the defendant used force against him. The defendant states that the plaintiff was not knocked to the ground and that a successful pad entry was performed. He states that other than an email noting that no force was used during the cell entry, no reports were written about the incident. He states that reports would have been prepared if the plaintiff had been knocked to the ground and if any force had been used. The plaintiff, on the other hand, states that he was knocked to the ground and that, while he was pinned down, the defendant struck him multiple times, resulting in bruises and pain that lasted for two to three weeks.

Determining whether the defendant's conduct was unreasonable turns largely on the credibility of the two witnesses. If the cell entry happened like the plaintiff states that it did, a reasonable jury could find that the defendant's use of force was excessive. Even though the plaintiff admits that he knowingly violated Jail rules, once he was on the ground

and prevented from moving by other officers, there would have been no need to strike him. A factfinder may consider the lack of contemporaneous documentation of the incident and the plaintiff's alleged injuries at trial. However, the lack of such documentation does not necessarily mean that the incident did not happen as described by the plaintiff. At summary judgment, the plaintiff has presented evidence that the defendant repeatedly struck him while he was held down by other officers. On this record, I cannot grant summary judgment for the defendant.

**C. Qualified Immunity**

The defendant contends that he is entitled to qualified immunity. According to the defendant, the plaintiff admits that he had no prior negative encounters with the defendant and that he was actively resisting a repeated command from a corrections officer to uncover his window and voluntarily exit his cell. The defendant contends that had he used focus strikes to gain compliance from the plaintiff, he would have been justified in his belief that such minimal force would have been appropriate.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted)). Qualified immunity is an affirmative defense. Once raised, the plaintiff must show that the defendants violated his constitutional rights and that the right at issue was clearly established at the time of the violation. *Pearson*, 555 U.S. at 232. The law is "clearly established" only if "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts

presented in the case at hand." *Figgs*, 829 F.3d at 905 (quoting *Campbell v. Peters*, 256 F.3d 695, 701 (7th Cir. 2001)) (internal quotation marks omitted). "The clearly established law must be 'particularized" to the facts of the case.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). It is not necessary that there be cases "directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 551 (internal quotation marks omitted).

While the plaintiff concedes that he knowingly violated Jail rules by flooding his cell and covering his cell window, his excessive force claim is based on the defendant's alleged use of force when the plaintiff was no longer refusing to follow orders and was pinned down by other officers and unable to move. It was clearly established in 2020 that correctional officers could not punish pretrial detainees by subjecting them to unreasonable excessive force when they were not actively resisting. *See Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015) (concluding that a reasonable officer was on notice that a manacled, non-resisting suspect already lying on his back did not justify the use of taser); *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) (a reasonable jury could find that an officer used excessive force when he deliberately brought down his knee on an individual's jaw who was "subdued at gunpoint, lying motionless and spread-eagled on the ground"); *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) ("The Constitution clearly does not allow police officers to force a handcuffed, passive suspect into a squad car by breaking his ribs."). The defendant is not entitled to qualified immunity on the plaintiff's excessive force claim.

9

## III. PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS

The plaintiff has filed a motion for discovery sanctions in which he contends that the defendant failed to provide him with court-ordered discovery materials. ECF No. 52. The court ordered the defendant to provide the plaintiff with responses to certain discovery requests by October 5, 2021. The defendant filed a response in which he states that on October 8, 2021, he mailed the discovery responses to the plaintiff. ECF Nos. 60, 61. The defendant states that preparation of the discovery response required counsel to request and obtain more documentation from the appropriate department and that a good faith effort was made to comply with the court's order. Sanctions are not warranted, and I will therefore deny the plaintiff's motion.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant's motion for summary judgment (ECF No. 29) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for discovery sanctions (ECF No. 51) is **DENIED**.

**IT IS FURTHER ORDERED** that a Telephonic Status Conference will be held on **February 22, 2022 at 9:30 a.m**.

Dated at Milwaukee, Wisconsin, this 7th day of February, 2022.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge